IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALLERGAN USA, INC. and ALLERGAN INDUSTRIE SAS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | C.A. No. 19-126-CFC |
| PROLLENIUM US INC. and PROLLENIUM MEDICAL TECHNOLOGIES INC., | ) ) ) ) | |
| Defendants. | ) | |
| ALLERGAN USA, INC. and ALLERGAN INDUSTRIE SAS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 20-104-CFC |
| PROLLENIUM US INC. and PROLLENIUM MEDICAL TECHNOLOGIES INC., | ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
MOTION TO STAY PENDING *INTER PARTES* REVIEW**

ASHBY & GEDDES
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Of Counsel:*

John W. Harbin
Gregory J. Carlin                                    *Attorneys for Defendants*
Warren Thomas
Robert J. Leonard
MEUNIER CARLIN & CURFMAN LLC
999 Peachtree Street NE, Suite 1300
Atlanta, GA 30309
(404) 645-7700

Dated: April 13, 2020

# TABLE OF CONTENTS

I.     NATURE AND STAGE OF THE PROCEEDINGS ...................................... 2

    A.   Allergan's First Action .......................................................... 2

    B.   Prollenium's IPRs ................................................................. 3

    C.   Allergan's Second Action .................................................... 3

II.    SUMMARY OF ARGUMENT ...................................................... 4

III.   LEGAL STANDARD ...................................................................... 7

IV.    ARGUMENT .................................................................................. 7

    A.   First Factor: A Stay Will Simplify the Issues for Trial ........................ 7

    B.   Second Factor: This Litigation is still in its Early Stages ................. 12

    C.   Third Factor: A Stay Will Not Unduly Prejudice Allergan ............... 15

V.     CONCLUSION ............................................................................ 21

# TABLE OF AUTHORITIES

<u>CASES</u>                                                                    Page(s)

*454 Life Scis. Corp. v. Ion Torrent Sys., Inc.*, No. 15-595-LPS,
    2016 WL 6594083 (D. Del. Nov. 7, 2016).................................7, 16, 17, 21

*Arch Chems., Inc. v. Sherwin-Williams Co.*,
    No. 18-2037-LPS, D.I. 48, oral order (D. Del. Nov. 5, 2019) ................... 11

*Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am., AFL-CIO*,
    544 F.2d 1207, 1215 (3d Cir. 1976) ............................................................ 7

*British Telecomms. PLC v. IAC/InterActiveCorp*, No. 18-366-WCB,
    2019 WL 4740156 (D. Del. Sept. 27, 2019) ......................................*passim*

*CallWave Commc'ns, LLC v. AT&T Mobility, LLC*,
    Nos. 12-1702 et al., 2015 WL 1284203 (D. Del. Mar. 18, 2015) .............. 13

*ACQUIS, LLC v. EMC Corp.*,
    109 F. Supp 3d 352 (D. Mass. 2015)........................................................... 15

*Cost Bros., Inc. v. Travelers Indem. Co.*,
    760 F.2d 58 (3d Cir. 1985) ........................................................................... 7

*Ethicon LLC v. Intuitive Surgical, Inc.*, No. 17-871-LPS,
    2019 WL 1276029 (D. Del. Mar. 20, 2019)...................................11, 16, 18

*Ever Win Int'l Corp. v. Radio Shack Corp.*,
    902 F. Supp. 2d 503 (D. Del. 2012) ........................................................... 18

*IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452-WCB,
    2019 WL 3943058 (D. Del. Aug. 21, 2019)................................................ 13

*NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058,
    2015 WL 1069111 (E.D. Tex. Mar. 11, 2015).......................................... 16

*Princeton Digital Image Corp. v. Konami Dig. Entm't Inc.*,
    No. 12-1461, 2014 WL 3819458 (D. Del. Jan. 15, 2014)..........5, 12, 13, 16

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
    759 F.3d 1307, 1318 (Fed. Cir. 2014) .................................................. 18, 21

Defendants Prollenium US Inc. and Prollenium Medical Technologies Inc. (collectively, "Prollenium") respectfully move this Court to stay these related civil actions pending resolution of the *inter partes* review ("IPR") proceedings before the Patent Trial and Appeal Board ("PTAB"). Plaintiffs Allergan USA, Inc. and Allergan Industrie SAS (collectively, "Allergan") asserted U.S. Patent Nos. 8,450,475 ("the '475 patent"); 8,357,795 ("the '795 patent"), 8,822,676 ("the '676 patent"), 9,089,519 ("the '519 patent"), 9,238,013 ("the '013 patent"), and 9,358,322 ("the '322 patent") patents in C.A. No. 19-126. Over the last month, the PTAB has instituted *inter partes* review on all six of these patents.

Allergan recently asserted U.S. Patent Nos. 10,391,202 ("the '202 Patent") and 10,485,896 ("the '896 Patent") in the second case, C.A. No. 20-104 (collectively, including the eight patents asserted in both cases, the "Asserted Patents"). These two additional patents from the newer case will be challenged by Prollenium at the PTAB in the near future.

As it stands today, 91% of Allergan's asserted claims in the first action are under review by the PTAB in an instituted IPR trial. For the two remaining IPR challenges to come, the patents are in the same family as claims already subject to an instituted IPR. As a result, institution is highly likely on the additional patents, which would constitute institution on every asserted patent across both cases. Therefore, granting a stay is likely to substantially simplify the issues in this case

as the PTAB has already found a reasonable likelihood that a majority of the claims at issue will be invalidated. Most of the work of the case remains to be done, including claim construction, fact depositions, expert discovery, summary judgment, and trial.

## I.    NATURE AND STAGE OF THE PROCEEDINGS

### A.    Allergan's First Action

Allergan filed its initial Complaint (D.I. 1)[1] against Prollenium on January 22, 2019, alleging infringement of the '475 patent and the '795 patent. On February 26, 2019, Allergan filed an Amended Complaint (D.I. 5), alleging infringement of each of the six asserted patents in that action. Those six patents share common priority documents and substantially the same specifications. On June 21, 2019, the Court entered a Scheduling Order (D.I. 19), setting deadlines for, among others, fact discovery to close on June 19, 2020, and trial to begin on June 14, 2021. Allergan served its Infringement Contentions on August 30, 2019, asserting infringement of *every claim* in the six Asserted Patents—a total of 125 claims. Allergan recently (in a January 2020 email) agreed to reduce the asserted claims to 105.

---

[1] All Docket Index citations are to the first case, No. 19-126, except where indicated.

## B.    Prollenium's IPRs

Between August 23 and October 25, 2019, Prollenium filed seven petitions for IPR challenging all the Asserted Patents in the first action. Recently, between March 19 and April 10, 2020, the PTAB granted all seven petitions and instituted IPR proceedings on all six patents (see table below). The PTAB found Prollenium demonstrated a reasonable likelihood of showing that all 96 claims across the six patents are invalid based on multiple combinations of prior art. E.g., Ex. A, 39.[2]

| IPR Petition No. | Challenged Patent | Challenged Claims | Petition Filing Date | PTAB Decision Granting Institution |
|---|---|---|---|---|
| IPR2019-01508 | '013 patent | 1-4 | 08/23/2019 | 03/19/2020 |
| IPR2019-01509 | '322 patent | 1-4 | 09/03/2019 | 03/19/2020 |
| IPR2019-01617 | '676 patent | 1-31 | 09/16/2019 | 03/20/2020 |
| IPR2019-01505 | '475 patent | 1-9, 18, 27-37 | 09/03/2019 | 03/19/2020 |
| IPR2019-01506 | '795 patent | 1-11, 22, 40-41 | 09/20/2019 | 03/31/2020 |
| IPR2019-01632 | '795 patent | 26-39 | 09/20/2019 | 03/31/2020 |
| IPR2020-00084 | '519 patent | 1-8 | 10/25/2019 | 04/10/2020 |

## C.    Allergan's Second Action

Following Prollenium's IPR filings for the patents asserted in the first action, Allergan filed a follow-on case on January 23, 2020. C.A. No. 20-104 ("the second action"). In the second action, Allergan asserts the '202 patent and the '896

---

[2] Prollenium submits these Decisions to Institute collectively in Ex. A to its motion.

patent. These two patents are part of the same family of patents asserted in the first action; they share the same specifications and claim many of the same features. Prollenium timely answered the complaint on March 16, 2020. On March 26th, the Court entered an Order directing the parties to "confer regarding coordination of the cases" and either submit a proposed scheduling order or advise the Court that a scheduling conference is needed by April 27, 2020. (No. 20-104 D.I. 12).[3]

Prollenium intends to file IPR petitions on the two patents asserted in the second action in the near future. Given the commonality of issues, Prollenium expects that the PTAB will use its same reasoning to institute trial on these related patents as well.

## II.   <u>SUMMARY OF ARGUMENT</u>

Courts typically consider three factors in determining whether to grant a stay: "(1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage." *British Telecomms. PLC v. IAC/InterActiveCorp*, No. 18-366-WCB, 2019 WL

---

[3] At a recent (April 2) discovery conference in the first action, Magistrate Judge Fallon directed the parties to incorporate provisions related to further narrowing the asserted claims and the invalidity arguments for *both cases* in the upcoming submission regarding coordination of the second action.

4740156, at *2 (D. Del. Sept. 27, 2019) (Bryson, J., sitting by designation);

*Princeton Digital Image Corp. v. Konami Dig. Entm't Inc.*, No. 12-1461, 2014 WL

3819458, at *2 (D. Del. Jan. 15, 2014) (citing cases). Courts will also consider a

"fourth factor," which includes an inquiry into whether the granting of a stay will

reduce the burden of litigation on the parties and the court. *British Telecomms.*

*PLC*, 2019 WL 4740156, at *2. This "burden of litigation" factor is generally

considered as part of the "simplifying the issues" factor. *Id.* at *3. Each of these

factors weighs in favor of a stay in this case.

**1. Simplifying issues for trial:**  The PTAB has instituted review of 6 of 8

asserted patents between the two cases. As of today, the PTAB has instituted IPR

trial on 96 of the 105 presently asserted claims in the first action. There will be a

*significant* simplification of issues because so many claims could be invalidated.

Even considering the additional 60 claims potentially at issue in the 2 patents in the

second action, the issues for trial would be greatly reduced by resolving the

validity of the similar claims of the presently challenged patents under PTAB

review.

**2. Stage of proceedings:**  The parties have exchanged initial disclosures and

initial discovery requests and responses in the first action. The parties have been

producing documents; production is due to be substantially completed April 20.[4] Claim construction briefing is ongoing, but no claim construction hearing has been held. The most costly and time-consuming stages of both cases are yet to come—fact depositions, expert discovery, trial, and post-trial proceedings. Fact discovery will not close for over two months, even barring any rescheduling related to the COVID-19 pandemic or the coordination of the two cases. Trial is well over a year away. Thus, granting a stay at this stage of the case will avoid needless discovery and conserve judicial resources.

**3. Undue prejudice or tactical disadvantage:**  The timing of Prollenium's PTAB petitions, as well as its request for stay, are well within the standards for diligence. Prollenium's petitions for IPR were filed within two months of receiving Allergan's infringement contentions across 125 claims in the first action, which is reasonable in view of the complexity of filing seven PTAB petitions against six asserted patents. This motion to stay comes within just a few weeks of receiving the first PTAB institution decision.

Although the parties are competitors, there is no indication that Prollenium will gain an unfair tactical advantage from the stay. Allergan did not seek a preliminary injunction, which suggests that a delay in judgment—if Allergan

---

[4] The parties recently stipulated to a 30-day extension of time to complete document productions. D.I. 73.

should successfully defend validity and prove infringement—will not cause irreparable harm. Further, courts have repeatedly noted that mere delay cannot constitute undue prejudice where, as here, the facts—including Allergan's dominant market share compared to Prollenium and the presence of at least one other current licensee in the market—suggest that delay can be adequately compensated by money damages.

In short, every factor favors a stay.

## III.   <u>LEGAL STANDARD</u>

The Court has discretionary authority to grant a motion to stay. *454 Life Scis. Corp. v. Ion Torrent Sys., Inc.*, No. 15-595-LPS, 2016 WL 6594083, at *2 (D. Del. Nov. 7, 2016) (citing *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985)). A stay is particularly appropriate when the outcome of another proceeding may "substantially affect" the issues in a case. *Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976).

## IV.   <u>ARGUMENT</u>

### A.   **First Factor: A Stay Will Simplify the Issues for Trial**

There is potential for substantial simplification given there are almost 100 asserted claims presently under review by the PTAB—and it is likely that more will come under review soon. The PTAB trial on the validity of a substantial

majority of the asserted claims will necessarily reduce the issues to be tried by this Court. The significance of this was aptly described in *British Telecommunications*, where the court explained that "[t]he most important factor bearing on whether to grant a stay is whether the stay is likely to simplify the issues at trial." 2019 WL 4740156, at *7. Indeed, the court noted, "Congress's purpose in creating an *inter partes* review procedure was to allow the administrative agency that issues patents to consider new information bearing on whether those patents should be canceled or confirmed," and that "[g]iving the agency the authority to consider the validity of patents in the *inter partes* review process was designed in large measure to simplify proceedings before the courts and to give the courts the benefit of the expert agency's full and focused consideration of the effect of prior art on patents being asserted in litigation." *Id.* (internal quotation marks omitted).

The court further noted that "even when IPRs are instituted on fewer than all the asserted claims, the policies favoring simplification and the reduction of litigation burdens on the parties and the court are often applicable" and then explained how simplification benefits are realized in different scenarios. *Id.* at *7–9. Many of those benefits are similarly applicable to this case, as detailed below.

At present, the PTAB has instituted review on all six patents asserted in the first action and six of the eight patents asserted overall. The claims under review by the PTAB include all claims of four asserted patents (the '013, '322, '519, and

'676 patents), and most claims of the '475 and '795 patents—all the claims of which Prollenium requested review. If the PTAB invalidates some of these claims (even if not all) the cases will unquestionably become simpler. *British Telecomms.*, 2019 WL 4740156, at *8 ("The removal of up to [82% of the] asserted claims will make the task of dealing with the remaining claims significantly easier."). In granting its decisions to institute IPR proceedings against the six patents, the PTAB has already determined that Prollenium has demonstrated a reasonable likelihood of showing all challenged claims, a majority of the possibly Asserted Claims, to be invalid. *See* Ex. A, 39, 87, 150, 197, 234, 271, 323 (findings for '013, '322, '676, '475, '795 (first petition), '795 (second petition), and '519 patents, respectively). According to the USPTO's statistics, 80% of instituted IPRs result in at least one challenged claim being found invalid, with 62% of instituted IPRs resulting in all challenged claims being found invalid.[5] Thus, there is a likelihood that the PTAB will invalidate all of the Asserted Claims challenged in the instituted IPRs, thereby necessarily simplifying the issues in this case by eliminating the '013, '322, '519, and '676 patents and a majority of claims of the '475 and '795 patents from this dispute. And while petitions have not yet been

---

[5] Trial Statistics, Patent Trial and Appeal Board, February 2020, Status of Petitions from Sep. 16, 2012 to Feb. 29, 2020, https://www.uspto.gov/sites/default/files/documents/Trial_Statistics_2020_02_29.pdf (last visited Apr. 9, 2020).

filed on the '202 and '896 patents asserted in the second action, the claims of these related patents are substantially similar to the claims presently under review.

Additionally, the PTAB has already rejected Allergan's arguments that no trial should be instituted. Allergan's arguments to the PTAB as to why it should not institute trial were largely the same across all seven of the petitions: It argued the PTAB should exercise its discretion to not institute trial (under 35 U.S.C. §§ 314(a) and 325(d)), but Allergan did not challenge Prollenium's grounds on the merits. In the seven institution decisions so far, the PTAB has rejected all of Allergan's arguments to not review the patents.[6] There is no reason to think its arguments will be persuasive in response to petitions for the '202 and '896 patents.

At a minimum, the validity of 96 out of 105 presently asserted claims will now be adjudicated by the PTAB, and that number only stands to increase in the coming months. All the challenged claims share common priority documents and specifications, so the PTAB's final written decisions will result in simplification of the issues for trial, regardless of whether the remaining petitions on the follow-on patents are granted.

---

[6] While each of the requested IPRs uses the same panel of three Administrative Patent Judges (APJ), Prollenium notes that *each* of the three assigned APJs has authored at least one institution decision. It is clear that the panel is plainly unanimous in its rejection of Allergan's arguments against institution of IPR trial.

"Second, even if the PTAB does not cancel all (or even any) of the asserted claims …, any conclusion that the PTAB reaches will have a likely effect on the litigation by limiting" the invalidity arguments Prollenium can make in this case in view of the statutory estoppel provision, 35 U.S.C. § 315(e)(2). *British Telecomms.*, 2019 WL 4740156, at *8. In other words, Prollenium would be estopped from seeking to invalidate a challenged claim on any ground that was raised or could have been raised in the respective IPR petition.

Third, the Court has not yet issued a ruling on claim construction and could choose to benefit from the PTAB's guidance. *Id.* As of November 2018, the PTAB construes terms "using the same claim construction standard that would be used to construe the claim in a civil action." 37 CFR § 42.100. This change in law favors a stay because the PTAB's analysis can no longer be discounted in district court proceedings based on the application of a different claim construction standard. *E.g.*, *Arch Chems., Inc. v. Sherwin-Williams Co.*, No. 18-2037-LPS, D.I. 48, oral order (D. Del. Nov. 5, 2019). Moreover, a PTAB "proceeding may produce additional prosecution history that could assist the Court in addressing the issues of claim construction and validity." *British Telecomms.*, 2019 WL 4740156, at *8; *Ethicon*, 2019 WL 1276029, at *2 ("There will be additional prosecution history relating to all of the claims in this case. Some claims may be cancelled. There may be amendments.").

Fourth, "allowing the PTO to adjudicate the validity of the claims before it in the IPR proceeding reduces what otherwise could be duplication of effort and possibly inconsistent results between the administrative agency and this Court." *British Telecomms.*, 2019 WL 4740156, at *8 (a stay "will minimize the risk of inconsistent results and conserve resources"; there is "little benefit to be gained from having two forums review the validity of the same claims at the same time")). Continuing either of the two pending litigations in parallel with the instituted IPRs increases the risk of inconsistent results and wasted resources of the Court and the parties with respect to claims that likely will be invalidated in the IPR proceedings.

Therefore, the considerations relevant to the first factor strongly favor a stay of this litigation pending resolution of the Prollenium IPR proceedings.

## B.   Second Factor: This Litigation is still in its Early Stages

PTAB proceedings "give the PTO an opportunity to reconsider patents that have become the focus of litigation, relieving the courts of some of the burdens of deciding issues of obviousness and anticipation, and saving the courts from having to adjudicate infringement claims based on patents of questionable validity." *British Telecomms.*, 2019 WL 4740156, at *3; *see also Princeton Digital Image Corp.*, 2014 WL 3819458, at *3 ("Granting such a stay early in a case can be said to advance judicial efficiency and 'maximize the likelihood that neither the Court

nor the parties expend their assets addressing invalid claims.'"). These benefits strongly favor a stay here.

As observed by the Court in *IOENGINE, LLC v. PayPal Holdings, Inc.*, "completing discovery, preparing expert reports, filing and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice" are "the most burdensome stages of the case." No. 18-452-WCB, 2019 WL 3943058, at *5 (D. Del. Aug. 21, 2019). Motions to stay pending resolution of IPRs are thus most often granted when the case is in the early stages of litigation. *Princeton Digital Image Corp.*, 2014 WL 3819458, at *3. Here, in the first action, the parties have exchanged initial discovery requests and have been producing documents, and claim construction briefing has begun. The second action, while it is likely that it will be coordinated with the first in some manner, does not yet have a scheduling order. Thus, both cases are still in their early stages, which strongly favors a stay.

Indeed, courts have found the second factor to favor a stay in litigations that are further advanced than this case. *See Princeton Digital*, 2014 WL 3819458, at *3-4 (stage of litigation favored a stay where, although a *Markman* hearing had already been held, "most of the significant case events are well in the future"); *CallWave Commc'ns, LLC v. AT&T Mobility, LLC*, Nos. 12-1702 *et al.*, 2015 WL 1284203, at *1 (D. Del. Mar. 18, 2015) (stage of litigation favored a stay where

"[d]iscovery is more advanced than would be ideal, but … few depositions have been taken and expert discovery has not yet begun");

In the present case, claim construction briefing is ongoing but not yet complete, so no Markman hearing has been held (pending entry of a coordinated schedule for the second action, it is scheduled in the first action for June 16, 2020). The parties have not yet taken (or *noticed)* any depositions in the first action; fact discovery in the first action does not close until June 19.[7] Because fact discovery has not been completed, expert discovery has not even begun. Dispositive motions are not scheduled for nine months, and trial isn't scheduled to begin until June 14, 2021 (two months after the due date for the last final written decision from the PTAB). D.I. 19. Accordingly, a stay would allow the Court to avoid having to construe claim terms that may be invalidated or amended during the IPR proceedings, and it would allow the parties to avoid the time and expense of completing fact and expert discovery, filing pre-trial motions, and preparing for trial on a set of claims likely to be affected through the IPR proceedings. Therefore, because the most burdensome stages of this case are still in the future,

---

[7] The parties are negotiating a proposed schedule incorporating the second action and fact discovery may need to be extended to address the new patents. Additionally, the ongoing COVID-19 pandemic raises the possibility that the parties may not be able to effectively complete discovery, particularly oral discovery, by the current date in any case.

the second factor strongly favors a stay of this litigation pending resolution of the
Prollenium IPR proceedings.

### C.   Third Factor: A Stay Will Not Unduly Prejudice Allergan

In analyzing undue prejudice and tactical disadvantage, courts in this District
have considered four factors: "(1) the timing of the request for review; (2) the
timing of the request for a stay; (3) the status of the review proceedings; and (4)
the relationship of the parties." *British Telecomms.*, 2019 WL 4740156, at *5.
Under these factors, Allergan will not be unduly prejudiced or put at a tactical
disadvantage by the requested stay.

The first factor, the timing of the request for review, supports granting a stay
in this case. As shown in the table on page 3 above, Prollenium filed its seven
petitions for IPR against the first six asserted patents between August 23, 2019 and
October 25, 2019. The first petition was filed within two months of the Court
entering the June 21 Scheduling Order (D.I. 19) and *before* Allergan served its
infringement contentions on August 30 (D.I. 39).[8] Five more petitions were filed in
September, within one month following Allergan's service of infringement
contentions, unexpectedly asserting all 125 claims of the six patents. *Cf. ACQUIS,
LLC v. EMC Corp.*, 109 F. Supp 3d 352, 359 (D. Mass. 2015) (finding it

---

[8] The first petition was filed six months after service of the summons and
complaint in this action. D.I. 8.

reasonable for defendant to file its IPR petitions within four months of receiving plaintiff's infringement contentions). And the last petition was filed the following month—just two months after receiving Allergan's infringement contentions and four months before the statutory deadline to file a petition for IPR. *See 454 Life Scis. Corp.*, 2016 WL 6594083, at *4 (filing petition "six months into litigation and well within the one-year statutory window" caused neither undue prejudice nor unfair tactical advantage). Prollenium's actions show it acted expeditiously to file the numerous petitions dictated by Allergan's broad infringement allegations.[9]

Courts considering this factor have recognized the "complexity entailed in seeking inter partes review" and have frequently granted motions to stay based on similar timing. *See, e.g.*, *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058-WCB, 2015 WL 1069111, at *4 (E.D. Tex. Mar. 11, 2015) ("a delay of seven and one-half months from the filing of the complaint is not unreasonable."); *Ethicon*, 2019 WL 1276029, at *2 (eleven month delay in filing IPRs not unreasonable). In *Princeton Digital*, the Court found the third factor to favor a stay even though the defendant filed its petition for IPR "almost a year to the day after Plaintiff filed the initial Complaint against it, and less than three months after the Scheduling Order

---

[9] Additionally, all the petitions were filed before Allergan filed the second action asserting two new patents.

issued." 2014 WL 3819458, at *4. Thus, the timing of Prollenium's IPR petitions favors a stay.

The second factor, the timing of the request for a stay, also supports granting a stay in this case. The PTAB instituted IPR proceedings for three of the Asserted Patents on March 19, 2020 and for a fourth (the '676 patent) on March 20, 2020. That same afternoon, Prollenium notified Allergan it intended to seek a stay and requested Allergan's consent or times to meet and confer. Then the PTAB instituted two IPR proceedings on the '795 patent on March 31. Allergan agreed to a meet and confer on April 1, but the parties could not agree to a stay. Then, on April 10, the PTAB instituted IPR on the last challenged patent of the first action. This motion was filed promptly after the last decision and 12 days after the parties' meet and confer. Prollenium has acted diligently in seeking this request for stay shortly after the institution decisions for its IPR petitions. *See 454 Life Sciences*, 2016 WL 6594083, at *4 ("Defendants filed their Motion shortly after the PTAB issued its decisions to proceed with a validity trial on all of the Asserted Claims, which is generally the ideal time at which to file such a request.").

The third factor, the status of the review proceedings, further supports granting a stay in this case. The PTAB has already instituted IPR proceedings on 96 of 105 claims and every patent asserted in the first case, and it is required to

issue final written decisions in all of those proceedings by April 2021, prior to the June 14 trial date.

Finally, although the "relationship between the parties" may disfavor a stay where the parties are competitors, mere competition is not enough. Even where the parties have some measure of competition, "whether the patentee will be *unduly prejudiced* by a stay in the district court proceedings during the [PTAB] review, like the irreparable harm-type inquiry, focuses on the patentee's need for an expeditious resolution of its claim." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014).

Allergan would suffer no irreparable harm by a delay to resolve the validity of the challenged patents at the PTAB. First, Allergan did not move for a preliminary injunction in either case, despite a trial date not set until June 2021 (two years after the initial scheduling order). While moving for preliminary relief is not strictly necessary, courts have considered the plaintiff's failure to seek preliminary relief in finding no undue prejudice. *Id.* at 1319 (reversing denial of stay); *Ethicon*, 2019 WL 1276029, at *3; *Ever Win Int'l Corp. v. Radio Shack Corp.*, 902 F. Supp. 2d 503, 511 (D. Del. 2012). Allergan's failure to seek preliminary injunctive relief confirms that Allergan has not suffered or risked irreparable harm by Prollenium's actions and that a stay would not unduly prejudice Allergan. *Ever Win*, 902 F. Supp. 2d at 511 ("Plaintiff never sought a

preliminary injunction, which suggests that any prejudice to Plaintiff that might result from delaying the ultimate resolution of this dispute is not as severe as it contends.").

That any harm could be compensated by damages is shown not only but Allergan's inaction concerning injunctive relief, but also by both the nature of the competition and Allergan's existing licensing of the asserted patents. While Allergan and Prollenium both sell HA dermal fillers with lidocaine, Allergan's market dominance and sales dwarf Prollenium's. For example, Allergan reports its 2019 sales of its Juvéderm Collection topped $587 million and *increased* over 2018 by 7%,[10] despite the launch of Prollenium's product at the end of 2018. *See* Allergan Reports Fourth Quarter and Full-Year 2019 Financial Results, Ex. B, at 1. In comparison, Prollenium's 2019 sales were around ███████. Ighanian Declaration, Ex. C ¶ 3. Thus, Allergan's sales are ████████████ Prollenium's and do not appear to be harmed irreparably by Prollenium's entry into the market.

Additionally, the second largest player in the market (behind Allergan) is Galderma, *see* Ighanian Declaration, Ex. C ¶ 4. And Galderma entered into a license with Allergan under the asserted patents in 2015. *See* Ex. D, Stipulation for Amended Consent Judgment, *Allergan USA, Inc. v. Medicis Aesthetics, Inc.*, No.

---

[10] Notably, Allergan claims all of its Juvéderm Collection of fillers have lidocaine and are covered by the asserted patents. *See* Allergan Patent Notices, https://www.allergan.com/about/patent-notices (last visited Apr. 8, 2020).

8:13-cv-01436 (C.D. Cal. June 17, 2015), ECF No. 150. 

. Another player in the market for HA fillers, Teoxane, has announced it will soon launch a competitive dermal filler product in the second quarter of this year via a distributor. Ex. F (announcing distribution agreement between Revance and Teoxane). Moreover, Allergan's business choice

shows that, if liability is ever established, then damages will be adequate to remedy any harm. See Ex. E at

.[11]

---



Rather than cause irreparable harm, any potential delay that may result from a stay in this case would be compensable, if need be, and does not rise to the level of *undue* prejudice. "A stay will not diminish the monetary damages to which [Allergan] will be entitled if it succeeds in its infringement suit—it only delays realization of those damages and delays any potential injunctive remedy." *VirtualAgility*, 759 F.3d 1307, 1318 (Fed. Cir. 2014). Even if a stay may cause "some amount of competitive harm to Plaintiff," the harm is not of "overwhelming significance" to the balance of factors in considering a stay where "money damages could adequately compensate" the plaintiff for the harm due to infringement. *454 Life Scis. Corp.*, 2016 WL 6594083, at *5.

To the extent there is harm during the pendency of a stay and delay of the current June 2021 trial date, that harm does not outweigh the substantial justification for the proposed stay. Therefore, the considerations relevant to the third factor favor staying this litigation pending resolution of the Prollenium IPR proceedings.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Prollenium respectfully requests the Court stay this litigation pending the final written decisions in the each of the instituted IPR proceedings.

ASHBY & GEDDES

/s/ Andrew C. Mayo

_____

John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendants*

*Of Counsel:*

John W. Harbin
Gregory J. Carlin
Warren Thomas
Robert J. Leonard
MEUNIER CARLIN & CURFMAN LLC
999 Peachtree Street NE, Suite 1300
Atlanta, GA 30309
(404) 645-7700

Dated: April 13, 2020

## <u>CERTIFICATION OF COMPLIANCE</u>

The undersigned hereby certifies that the foregoing brief contains 4996 words, excluding the cover page, tables, and signature blocks, and that it complies with the Court's type, font, and word limitations.

*/s/ Andrew C. Mayo*

_____

Andrew C. Mayo