IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALLERGAN USA, INC., and ALLERGAN INDUSTRIE SAS,<br><br>       Plaintiffs,<br><br>v.<br><br>PROLLENIUM US INC. and PROLLENIUM MEDICAL TECHNOLOGIES, INC.,<br><br>       Defendants. | **C.A. 19-126 (CFC)(SRF)** |
| ALLERGAN USA, INC., and ALLERGAN INDUSTRIE SAS,<br><br>       Plaintiffs,<br><br>v.<br><br>PROLLENIUM US INC. and PROLLENIUM MEDICAL TECHNOLOGIES, INC.,<br><br>       Defendants. | **C.A. 20-104 (CFC)(SRF)** |

**COMBINED OPPOSITION TO DEFENDANTS' MOTION
TO STAY PENDING *INTER PARTES* REVIEW**

**TABLE OF CONTENTS**

I.   INTRODUCTION......................................................................................1

II.  NATURE AND STAGE OF PROCEEDINGS ....................................2

    A.   C.A. 19-126. ..............................................................................2

    B.   C.A. 20-104. ..............................................................................3

    C.   Prollenium's IPRs.......................................................................3

III. SUMMARY OF THE ARGUMENT ...................................................4

IV.  STATEMENT OF FACTS ...................................................................5

    A.   Allergan and Prollenium Are Direct Competitors. .............................5

    B.   Prollenium Sought a License from Allergan Pre-Suit. .........................6

    C.   Prollenium Threatened to File IPRs in January 2019 But
        Delayed Several Months. ............................................................6

V.   LEGAL STANDARD...........................................................................7

VI.  ARGUMENT ......................................................................................8

    A.   A Stay Pending Will Unduly Prejudice Allergan While
        Providing Prollenium A Competitive Windfall. ...............................8

        i.    Prollenium Delayed Filing Its IPRs for 7+ Months...................8

        ii.   A Stay Would Extend Far Beyond the Current Trial Date.......10

        iii.  Because Prollenium is a Direct Competitor, a Stay Would
            Have "Outsized Consequences". ............................................12

            (1)   Prollenium and Allergan Are Direct Competitors..........12

            (2)   All Other Players in the Market Are Licensees.............14

            (3)   Irreparable Harm is Not the Standard for Denying
                 a Stay. ........................................................................15

B.   The Potential Simplification of *Some* Issues Does Not
     Outweigh the Prejudice That Would Result from Staying the
     *Entire* Case. ........................................................................................17

     i.    The IPRs Do Not Include Every Asserted Patent. ...................17

     ii.   The IPRs Will Not Address All Aspects of this
           Litigation. .................................................................................17

     iii.  This Litigation Can Proceed Without Imposing a
           Significant Burden on the Court's Resources. ..........................19

C.   Given the Stage of the Proceedings, Resources Are Best
     Deployed Seeing the Case Through to Conclusion. ...........................20

VII. CONCLUSION ...............................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Belden Techs. Inc. v. Superior Essex Commc'ns LP*,
    C.A. 08-63-SLR, 2010 WL 3522327 (D. Del. Sept. 2, 2010) ............................10

*Boston Scientific Corp. v. Cordis Corp.*,
    777 F. Supp. 2d 783 (D. Del. 2011) ...................................................................8

*Cephalon, Inc. v. Impax Labs., Inc.*,
    C.A. 11-1153-SLR, 2012 WL 3867568 (D. Del. Sept. 6, 2012) .........................8

*Cooper Notification, Inc. v. Twitter, Inc.*,
    C.A. 09-865-LPS, 2010 WL 5149351 (D. Del. Dec. 13, 2010) ........................16

*Davol, Inc. v. Atrium Med. Corp.*,
    C.A. 12-958-GMS, 2013 WL 3013343 (D. Del. June 17, 2013) .................13, 15

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.*,
    734 F. Supp. 656 (D. Del. 1990) .........................................................................8

*FMC Corp. v. Summit Agro USA, LLC*,
    CA. 14-51-LPS, 2014 WL 3703629 (D. Del. July 21, 2014) ...........................14

*Hologic, Inc. v. Minerva Surgical, Inc.*,
    325 F. Supp. 3d 507 (D. Del. 2018) ..................................................................11

*Invensas Corp. v. Samsung Elecs. Co., Ltd.*,
    C.A. 17-1363-MN-SRF, 2018 WL 4762957 (D. Del. Oct. 2, 2018) ...........17, 18

*Plastic Omnium Advance Innovation & Research v. Donghee Am.*,
    C.A. 16-187-LPS, (D.I. 278) (D. Del. Mar. 9, 2018) ...................................14, 17

*President & Fellowes of Harvard College v. MicronTech, Inc.*,
    C.A. 17-1729-LPS-SRF (D.I. 213) (D. Del. Jan. 8, 2018) ................................12

*SenoRx, Inc. v. Hologic, Inc.*,
    C.A. 12-173-LPS, 2013 WL 144255 (D. Del. Jan. 11, 2013) .....................16, 21

*Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*,
    193 F. Supp. 3d 345 (D. Del. 2016) .............................................................13, 18

*TruePosition, Inc. v. Polaris Wireless, Inc.*,
    C.A. 12-646-RGA-MPT, 2013 WL 5701529 (D. Del. Oct. 21,
    2013) ............................................................................................................... 18

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
    759 F.3d 1307 (Fed. Cir. 2014) ......................................................................... 16

*Yodlee Inc. v. Plaid Techs. Inc.*,
    C.A. 14-1445-LPS-CJB, (D.I. 312) (D. Del. Nov. 16, 2016) ............................ 21

## I.      INTRODUCTION

A stay in a competitor-versus-competitor patent infringement case like this is highly disfavored.  The accused infringer, Prollenium, willfully entered the market knowing it risked being sued, after its attempt to solicit a license from Allergan failed. As a result, licensed dermal fillers with lidocaine—like Allergan's JUVEDÉRM® Products—are facing unlicensed competition that is diverting sales, eroding prices, and gaining market share.

Rather than immediately file IPRs that it represented were ready, Prollenium waited seven months to begin filing them at irregular intervals.  While those IPRs were instituted on six of the eight patents at issue, the PTAB will not resolve all the issues between the parties, even in Prollenium's best case scenario.

In the meantime, the parties have significantly developed their cases.  Even Prollenium itself believes that claims and defenses should be narrowed for trial, given the significant discovery to date.  Document production is complete and the fact discovery deadline is approaching, followed by expert discovery.  In little more than a year, this case will be ready for trial.

A stay at this juncture will do no more than squander the parties' investments to date.  As a competitor to Allergan, the requested stay stands to reward Prollenium with years' worth of continued sales—and thus infringement of Allergan's patents— the entire time protected from the risk of proceeding to verdict. In the meantime,

Allergan and its licensees will suffer significant damages that Prollenium may never be able to repay.  All the relevant legal factors weigh against a stay in these circumstances.  Prollenium's motion should be denied.

## II.   NATURE AND STAGE OF PROCEEDINGS

Prollenium's motion seeks to stay two related patent infringement cases.  In each case, Allergan accuses Prollenium of infringing patents directed to dermal fillers—*i.e.*, substances that are injected into the skin to smooth lines or wrinkles and to restore lost volume.

### A.   C.A. 19-126.

Allergan filed the first case on January 22, 2019, for infringement of U.S. Patent Nos. 8,450,475 and 8,357,795.  On February 26, 2019, Allergan amended its complaint to include four additional patents—U.S. Patent Nos. 8,822,676; 9,089,519; 9,238,013; and 9,358,322.

The first case is set for jury trial on June 14, 2021.  The parties have completed significant discovery—Allergan served infringement contentions in August 2019, and Prollenium served invalidity contentions in September 2019.  The parties substantially completed their document production, having produced hundreds of thousands of pages between them.  Fact discovery is set to close in the coming months, and expert discovery to be completed not long after.

**B.     C.A. 20-104.**

Allergan filed the second case on January 23, 2020, for infringement of U.S. Patent Nos. 10,391,202 and 10,485,896.  The patents in the two cases are related. They are from the same patent family and also concern dermal fillers, although they are more particularly directed to processes for making such fillers.  Thus, while similar to each other, the proofs of infringement and challenges of validity may include some different evidence.

The parties' significant discovery progress, which will apply in both cases, is reflected in today's case coordination submission, which provides a timeline for the parties to begin narrowing their theories for trial and proposes an expedited schedule resulting in both cases reaching trial in June 2021.  *See* C.A. 19-126, D.I. 93; C.A. 20-104, D.I. 20.

**C.     Prollenium's IPRs**

Prollenium filed seven IPRs on the six patents asserted in C.A. 19-126:

| IPR No. | Patent | Filing Date |
|---|---|---|
| 19-1508 | '013 Patent | 8-23-19 |
| 19-1509 | '322 Patent | 9-3-19 |
| 19-1505 | '475 Patent | 9-3-19 |
| 19-1617 | '676 Patent | 9-16-19 |
| 19-1632 | '795 Patent | 9-20-19 |
| 19-1506 | '795 Patent | 9-20-19 |
| 20-0084 | '519 Patent | 10-25-19 |

Prollenium has not filed any IPRs directed to the patents asserted in C.A. 20-104, but it has represented that it "intends to . . . in the near future."  Br. at 4.

## III.   SUMMARY OF THE ARGUMENT

1.   **Relevant Factors Weigh Against a Stay.**  Each of the factors courts consider weighs against a stay in these circumstances.  Granting a stay in this case, at this time, with these parties, risks substantial prejudice that far outweighs the limited opportunities for simplification of proceedings.  The Court should deny Prollenium's motion and the parties should proceed to refine their cases for trial.

2.   **Undue Prejudice to Allergan.**  Prollenium is a competitor to Allergan for the product at issue.  It has been willfully infringing Allergan's patents—patents to which Prollenium recognized it required a license.   In doing so, Prollenium is competing directly with and taking sales away from Allergan, and depressing royalties it receives from sales by licensed competitors.  Although the parties are set for trial in little more than a year, granting the stay Prollenium now requests would extend the harm to Allergan for three or four more years, if not longer.  In that time, Allergan and its licensees will suffer compounding losses due to diluted market share and price erosion, while Prollenium will pad its coffers with ill-gotten gains.

3.   **A Stay Will Not Simplify the Issues.**  The Court typically only grants stays where they will resolve all, or nearly all, issues that would otherwise proceed through litigation.  Here, a stay will *not* resolve all the issues.  Not all the patents asserted in the two cases are subject to IPRs, and not all the issues that are being litigated between the parties will be addressed by the PTAB.  While Prollenium might

hope to invalidate all the claims of Allergan's patents, based on the record as it stands today this case will return to this Court for further litigation.

4.      **The Status of the Proceedings Is Advanced.**  This case is significantly developed.  Document production is substantially complete, fact discovery is nearly over, the parties are due to exchange expert reports in just a few months, and they are on track to present a jury trial in a little over a year.  In these circumstances, this factor weighs against a stay.

## IV.   STATEMENT OF FACTS

### A.     Allergan and Prollenium Are Direct Competitors.

Allergan and Prollenium compete in the market for dermal filler products in the United States.  Allergan's products include its JUVEDÉRM® Products, which are injectable hyaluronic acid ("HA") gels that contain a small quantity of local anesthetic, lidocaine.  HA dermal fillers temporarily add volume to facial tissue and restore a smoother appearance to the face.  HA dermal fillers with lidocaine improve the comfort of the injection by easing some of the pain of injection.  Allergan's JUVEDÉRM® Products were approved by the U.S. Food and Drug Administration to last up to one year from initial treatment.  They account for more than $500 million of sales per year in the United States.

Prollenium also makes and sells dermal filler products, among them, the Revanesse® Versa+$^{TM}$.  The Revanesse® Versa+$^{TM}$ is an injectable HA gel that

includes lidocaine for the correction of facial wrinkles and folds.  The Revanesse®

Versa+™ competes directly with Allergan's JUVEDÉRM® Products.

**B.     Prollenium Sought a License from Allergan Pre-Suit.**

Recognizing that it would practice Allergan's patent claims, Prollenium

contacted Allergan about securing a license for Revanesse® Versa+™ on October 31,

2018.  *See* Ex. A.  Ario Khoshbin, the founder and CEO of Prollenium, emailed

Allergan to "discuss my companies [sic] new product Revanesse Versa with

Lidocaine."  *Id.*  "Given Allergans [sic] patent portfolio related to Hyalurionic Acid

fillers with lidocaine, [Prollenium] thought it would be prudent to reach out to you

before we begin to market the device in the United States."  *Id.*

Allergan exchanged correspondence and telephone calls with Mr. Khoshbin and

Khasha Ighanian, the Co-President of Prollenium, on several occasions over the

course of November and December 2018.  *See, e.g.,* Ex. B.  While apparently

recognizing that its product infringed Allergan's patents and seeking a license,

Prollenium nonetheless abruptly broke off communications in December 2018 and

began marketing Revanesse® Versa+™ in the United States.

**C.     Prollenium Threatened to File IPRs in January 2019 But Delayed Several Months.**

In response to Prollenium's aggressive and willful infringement, Allergan filed

its original lawsuit for infringement of the '475 and '795 Patents.  The next day—

January 23, 2019—Prollenium contacted Allergan: "For the purpose of a settlement I

would like to see if we can have a conversation in the next few days before we file an IPR." Ex. C. When Allergan inquired about the basis for Prollenium's IPR, Mr. Khoshbin forwarded twenty-one alleged prior art references. Ex. D. Included in that email was "a copy of our experts [sic] cv"—Dr. Dale DeVore—and copied on the email was "ccurfman@mcciplaw.com." *Id.*

Further discussions between the parties were unavailing, and the litigation proceeded. On August 23, 2019—seven months after Prollenium threatened that they were prepared to file an IPR—Prollenium filed its first IPR. Lead counsel on the petition was Christopher L. Curfman, who listed ccurfman@mcciplaw.com as his email address. The petition included a declaration by Dale P. Devore, Ph.D. In other words, although Prollenium had already identified its IPR counsel, its IPR expert, and its leading prior art, Prollenium waited seven months to begin filing its IPRs. Over the following two months, through October 25, 2019, Prollenium sequentially filed six additional IPRs.

## V.    LEGAL STANDARD

Motions to stay invoke the broad discretionary powers of the court. *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990). In exercising its discretion on a motion to stay, the court generally considers three factors: "(1) whether the granting of a stay would cause the non-moving party to suffer undue prejudice from any delay or allow the moving party to gain a clear tactical advantage over the

non-moving party; (2) whether a stay will simplify the issues for trial; and (3) whether discovery is complete and a trial date set." *Cephalon, Inc. v. Impax Labs., Inc.*, C.A. 11-1153-SLR, 2012 WL 3867568, at *2 (D. Del. Sept. 6, 2012).  Here, all factors weigh against a stay.

## VI.   ARGUMENT

### A.   A Stay Pending Will Unduly Prejudice Allergan While Providing Prollenium A Competitive Windfall.

To evaluate the likelihood of prejudice, the Court should consider when the IPR was filed, when the stay was requested, the status of the proceedings, and the relationship of the parties.  *Boston Scientific Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 789 (D. Del. 2011).

### i.   Prollenium Delayed Filing Its IPRs for 7+ Months.

While Prollenium claims to have "expeditiously" filed its IPRs, in fact it waited months to begin filing them.  And once it began, it dragged the process out for over two more months.  Prollenium would have the Court look at the timing of the Court's scheduling order or the timing of the parties' contentions served in this case, but Prollenium is ignoring the fact that it knew about Allergan's patents and purported to be prepared to file IPRs seven to nine months earlier.

This is not a case where Prollenium was unaware of Allergan's patents until it was suddenly served one day with a complaint for patent infringement.  Prollenium knew about Allergan's JUVEDÉRM® Products and Prollenium knew that the

JUVEDÉRM® Products were protected by patents.  Prollenium proactively contacted Allergan and ***asked Allergan*** for a license in October 2018, knowing that Revanesse® Versa+$^{TM}$ infringed Allergan's patents.

While Prollenium's initial overtures were presented as an opportunity to avoid legal proceedings, it later became apparent that Prollenium was preparing for a fight all along.  Not long after the parties began their discussions, Prollenium broke off negotiations and began marketing its product without a license.

When Allergan sued for infringement, Prollenium was immediately armed with a threat of filing IPRs.  So much so, in fact, that it had identified IPR counsel and a retained expert.  *See* Ex. D (sending a copy of Prollenium's expert's CV to Allergan and copying on the correspondence Prollenium's IPR counsel).

If Prollenium wanted to avail itself of the convenience and cost savings of IPRs over the expense of litigation, it should have filed its IPRs ***then***—in January 2019. IPRs filed then, if instituted, would be approaching final written decisions in less than six months.  Instead, Prollenium engaged Allergan in litigation, sold its infringing product, and waited.

A stay is disfavored where the timing of the request suggests a dilatory intent by the movant.  *See Belden Techs. Inc. v. Superior Essex Commc'ns LP*, C.A. 08-63-SLR, 2010 WL 3522327, at *2 (D. Del. Sept. 2, 2010) ("A request for reexamination made well after the onset of litigation followed by a subsequent request to stay may

9

lead to an inference that the moving party is seeking an inappropriate tactical advantage.").  Prollenium's tactics suggest purposeful delay to extend its access to the market at the expense of Allergan and its licensees.  In these circumstances, this factor weighs against entry of a stay.

### ii.    A Stay Would Extend Far Beyond the Current Trial Date.

This case is significantly progressed and will be ready for a jury trial in little more than a year, whereas the IPRs will not reach a final written decision by the PTAB until March 2021 and, based on the average duration of an appeal at the Federal Circuit, will not receive a final appellate decision before June 2022.  While currently professing to seek a stay only through the issuance of a final written decision, Prollenium's track record reflects plans to take advantage of its unfettered access to the market for as long as possible.

Weeks ago, when Prollenium first broached the topic of a stay, Allergan sought potential compromises that would stay the proceedings as Prollenium wishes while addressing Allergan's concerns about prejudice and delay in the litigation.  *See* Ex. E. Among other things, Allergan asked if Prollenium would agree to stay only the portion of the case that the PTAB would be addressing while proceeding on the rest, or to stipulate to infringement to the work that would need to be done after a stay lifted, or to withdraw its product from the market to pause its acts of infringement.  *Id.* In each instance, Prollenium refused.  *Id.*

Allergan also asked if Prollenium was seeking a stay pending only final written decision, or else through appeal. *Id.* The difference is significant. While the ***currently filed*** IPRs should be resolved within 12 months,[1] an appeal potentially adds years more. *See* Ex. F (stating the ***median*** time to disposition for an appeal from the USPTO is 15 months).

Although Prollenium currently "requests the Court stay this litigation pending the final written decisions in [] each of the instituted IPR proceedings," those decisions will not be binding on either party until the time for appeal has run or a final judgment is entered by the Federal Circuit. *See, e.g.*, *Hologic, Inc. v. Minerva Surgical, Inc.*, 325 F. Supp. 3d 507, 518–19 (D. Del. 2018). Thus, regardless of the outcome, the Court is likely to hear in 12 months (or 18+ months if IPRs are filed on the '202 and '896 Patents) that judicial efficiency and conservation of resources counsels yet an additional stay pending appeal. Assuming even a median duration at the Federal Circuit, the stay would not be reading for lifting before July 2022 and January 2023.

Of course, if these matters are stayed now, the parties will not be trial ready when the stay lifts. They will be essentially where they are now—12 months away

---

[1] Prollenium has stated it intends to file IPRs as to the '202 and '896 Patents. If those IPRs were filed today, institution decisions would not be made before the end of October 2020, and final written decisions would not reached before October 2021—18 months from now.

from trial, in the best case.  They will then need to resume fact discovery, deposing witnesses whose memories are three years' older, then expert discovery, before finally trial.  Allergan will be lucky to get to trial within the next four years.  In the meantime, Prollenium will have continued to expand its reach into the market while eroding the prices and sales of Allergan and its licensees.

When a PTAB decision will not be **<u>final</u>** before a jury trial is set to begin, this factor weighs against granting a stay.  *See President & Fellowes of Harvard College v. MicronTech, Inc.*, C.A. 17-1729-LPS-SRF (D.I. 213 at 1–2) (D. Del. Jan. 8, 2018) (denying motion stay pending IPR when "any PTAB decision . . . will almost certainly not be final (*i.e.*, appellate rights exhausted) . . . before the jury trial in this matter begins").  As in *Harvard*, the stay Prollenium proposes here would not achieve a final resolution before an already-scheduled jury trial.  This case is too far advanced and too close to trial to halt everything for IPRs.

### iii.    Because Prollenium is a Direct Competitor, a Stay Would Have "Outsized Consequences".

#### (1)    Prollenium and Allergan Are Direct Competitors.

Allergan and Prollenium directly compete in the market for dermal filler products.  "[W]hen the parties are direct competitors, there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting that infringement has occurred, including the potential for loss of market share and an erosion of goodwill."  *Toshiba Samsung Storage Tech. Korea*

*Corp. v. LG Elecs., Inc.*, 193 F. Supp. 3d 345, 352 (D. Del. 2016).  Consequently, courts are hesitant to grant when the parties are direct competitors.  *See Davol, Inc. v. Atrium Med. Corp.*, C.A. 12-958-GMS, 2013 WL 3013343, at *3 (D. Del. June 17, 2013).

Prollenium does not deny it competes with Allergan.  Its advertising specifically targets Allergan, its JUVEDÉRM® Products, or the products of its licensees.  *See, e.g.,* Ex. G.  Every Revanesse® Versa+$^{TM}$ sale that Prollenium makes is a sale diverted from Allergan or one of its licensees.  To preserve market share, Allergan and its licensees may need to adjust their prices and charge less than they could if they otherwise had the benefit of their exclusionary patent rights.  Even if Prollenium is ultimately removed from the market, the intervening years of infringement will permanently reshape the market for Allergan and its licensees.

These are concerns that are specific to competitor-versus-competitor cases.  Allergan is not a licensing entity seeking to monetize a portfolio.  It is a leading manufacturer of dermal fillers that employs thousands of employees who continue to develop new, innovative products that it brings to market.  Prollenium is not an innocent actor, blindsided by a demand letter and a patent infringement suit.  It knew about Allergan's patents, it tried to license them, and when it did not get the terms it preferred, it made the calculated decision to enter the market at risk.  In cases like this, where a stay can reshape a market and convey an undeserved competitive advantage,

13

stays are disfavored. *See Plastic Omnium Advance Innovation & Research v. Donghee Am.*, C.A. 16-187-LPS, (D.I. 278) (D. Del. Mar. 9, 2018) (denying stay where parties are direct competitors).

### (2) All Other Players in the Market Are Licensees.

Prollenium tries to downplay the competitive relationship between the parties. Citing relative sales, Prollenium argues that Allergan dwarves all others and that other players have a more significant share of the market. That there are other competitors on the market does not change the calculus. "[E]ven in cases where there were some number of other competitors in the market, so long as plaintiff and defendant were joint market participants and engaged in some level of competition, our Court has tended to find that some amount of potential prejudice is at play." *FMC Corp. v. Summit Agro USA, LLC*, CA. 14-51-LPS, 2014 WL 3703629, at *6 (D. Del. July 21, 2014) (in denial of motion to stay pending ITC action, collecting cases denying stays in competitor cases).

Moreover, all the other market participants that Prollenium identifies ***are licensees*** of Allergan. When those competitors make sales, Allergan still benefits from its royalty relationship. Through this proposed stay, Prollenium seeks not only a competitive advantage over Allergan, but over all those other companies that chose to respect Allergan's intellectual property and to participate in the market pursuant to

negotiated agreements.  In competitor cases like this, the prejudice of a stay weighs heavily against its entry.

### (3)   Irreparable Harm is Not the Standard for Denying a Stay.

Prollenium contends that a stay must be acceptable because Allergan did not seek a preliminary injunction.  "[F]ail[ure] to seek a preliminary injunction is not dispositive as to the 'competition' issue." *Davol, Inc. v. Atrium Med. Corp.*, C.A. 12-958-GMS, 2013 WL 3013343, at *4 (D. Del. June 17, 2013).  Whether a preliminary injunction was sought may give an indication of harm where it is not clear if the parties are competitors, but when "there is little doubt that [the defendant's] products compete directly with [the plaintiff's] . . . the court has little reason to consider whether a preliminary injunction was sought." *Id.*

Allergan's decision not to seek a preliminary injunction when it anticipated reaching trial in little more than two years does not somehow amount to a concession that a stay delaying resolution of the case by multiple years is acceptable.  Indeed, "courts have cautioned not to equate the calculus utilized with respect to this factor"—*i.e.*, the likelihood of suffering undue prejudice from a stay—"with that of the test used to examine a request for a preliminary injunction (which asks, *inter alia*, whether any harm suffered is irreparable)."[2] *SenoRx, Inc. v. Hologic, Inc.*, C.A. 12-173-LPS,

---

[2] Prollenium cites *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307 (Fed. Cir. 2014), for the proposition that irreparable harm must be demonstrated to establish

2013 WL 144255, at *8 (D. Del. Jan. 11, 2013); *see also Cooper Notification, Inc. v. Twitter, Inc.*, C.A. 09-865-LPS, 2010 WL 5149351, at *4 (D. Del. Dec. 13, 2010) (the failure to seek preliminary injunctive relief "tells one nothing . . . the potential irreparability of any harm from any infringement (if ultimately proven)").

Similarly, Prollenium's conclusory statement that money damages will eventually compensate for delayed enforcement of Allergan's patent rights does not deserve to be credited. Prollenium is proposing a stay that could potentially last multiple years. It has made no showing that it will be able to afford damages on years' worth of sales if it is ultimately found to infringe. Prollenium has made no offer of a bond to secure its windfall or to deposit its profits in escrow to ensure that they are available to pay damages. Irreparable harm is not the standard for denying a motion to stay—likelihood of undue prejudice is—but even if it was Prollenium's assurance would be insufficient to entitle it to a stay.

---

undue prejudice, and that money damages should be sufficient to remedy any delay. This reliance is misplaced. *VirtualAgility* was an appeal from the denial of a motion to stay pending Covered Business Method Review, an entirely different kind of PTAB review, for which Congress specifically enacted a standard for evaluating motions to stay and a path for *de novo* interlocutory appeal from the same. *See VirtualAgility*, 759 F.3d at 1309–10. In other words, *VirtualAgility* concerns very special circumstances regarding questionable business method patents that are often asserted by non-practicing entities. Such a case is very different from the present one, where the parties are direct competitors in the field of providing medical devices to physicians and the patents-in-suit are directed to the FDA-regulated dermal fillers.

16

**B.    The Potential Simplification of *Some* Issues Does Not Outweigh the Prejudice That Would Result from Staying the *Entire* Case.**

Where IPR might simplify some issues, but not all, stays are disfavored. "Courts in this district disfavor a stay under these circumstances, in which the issues for trial may not entirely overlap with those to be reviewed by the PTAB." *Invensas Corp. v. Samsung Elecs. Co., Ltd.*, C.A. 17-1363-MN-SRF, 2018 WL 4762957, at *3 (D. Del. Oct. 2, 2018).

### i.    The IPRs Do Not Include Every Asserted Patent.

Prollenium moves to stay two cases—one case, in which every patent is subject to an instituted IPR, and a second case, in which **none** of the patents are subject to even a petition for an IPR, let alone an institution decision.  The failure of a stay to potentially resolve every claim in the case is often fatal to a stay request.  *See, e.g.*, *Plastic Omnium*, C.A. 16-187-LPS, (D.I. 278) (denying stay where no IPR had been requested for one of seven patents-in-suit).  Regardless of what happens in the IPRs on the first six patents, this case will inevitably resume and proceed to trial. Therefore, this factor weighs against a stay.

### ii.    The IPRs Will Not Address All Aspects of this Litigation.

Even if there were IPRs on every patent in each case, a stay will not definitively resolve all the parties' claims and defenses.  Prollenium's simplification arguments depend on assuming a best case scenario from its perspective where it is invalidates essentially all of Allergan's claims.  The reality, however, is that IPRs often result in

at least *some* of the claims surviving, and when they do there will be a wide range of issues for the parties to address: infringement, indefiniteness, damages, and enforceability.

"Courts in this district disfavor a stay under these circumstances, in which the issues for trial may not entirely overlap with those to be reviewed by the PTAB." *Invensas Corp.*, 2018 WL 4762957, at *3; *see also Toshiba Samsung Storage Tech*, 193 F. Supp. 3d at 349 (denying motion to stay where "the PTAB will not take up any arguments relating to infringement, damages or other issues that will arise in this litigation"); *TruePosition, Inc. v. Polaris Wireless, Inc.*, C.A. 12-646-RGA-MPT, 2013 WL 5701529, at *5 (D. Del. Oct. 21, 2013) (holding that, "where other challenges, including § 112 arguments, are presented" in the litigation which will not be addressed in the IPR proceedings, "a stay is disfavored").

These are the circumstances the parties face in this case. The PTAB will address one thing—invalidity under §§ 102 and 103. And while Prollenium may be estopped from re-litigating those questions after a stay, there will still be important issues requiring substantial attention from the parties and this Court after the stay is lifted—including infringement, as well as Prollenium's recently permitted inequitable conduct counterclaim. Is it better to proceed with those issues now so that the parties can quickly move to an ultimate resolution regardless of what happens before the PTAB.

### iii.   This Litigation Can Proceed Without Imposing a Significant Burden on the Court's Resources.

The parties have accomplished significant work to date—completing document production, nearly completing fact discovery, completing claim construction briefing in the initial action, and being prepared to enter into expert discovery in a few months so that they are ready for trial next year.  While litigation is not burden-free, the parties chose to incur these costs.  Prollenium chose to enter the market with a product it knew to be infringing when it did not obtain a license from Allergan.  Allergan chose to bring a lawsuit against Prollenium to enforce its patent rights.  Continuing to bear these costs in parallel to IPRs is not an undue or unexpected burden on the parties.

That the parties must continue to invest resources does not mean that they will impose on the Court.  To date, there have been relatively few discovery disputes requiring Court intervention, and with the upcoming close of fact discovery there is unlikely to be many more.  The parties have completed briefing claim construction in the first case, and those issues are likely to fall away when the parties engage in case narrowing under the proposal that has been submitted to the Court.  *See* C.A. 20-104, D.I. 20.  And while the parties have proposed a claim construction schedule for the

'202 and '896 Patents, it is conceivable that the parties will be find that schedule unnecessary and the Court will not need to hold a *Markman* hearing at all.[3]

Thus, if the Court were to deny a stay, it is primarily the parties that would incur a burden as they continue to prepare their claims and defenses for trial. This factor should weigh against a stay.

## C.   Given the Stage of the Proceedings, Resources Are Best Deployed Seeing the Case Through to Conclusion.

The parties' progress in this case has been significant. As Prollenium has repeatedly advocated, the parties have done so much discovery that they are ready to narrow their theories. In cases like this, it would be an unfortunate waste of the parties' resources to abandon the work done to date. When a party requests a stay in the later stages of litigation it is likely that "the Court and the parties have already expended significant resources . . . and the principle of maximizing the use of judicial and litigant resources is best served by seeing the case through to its conclusion." *SenoRx, Inc.*, 2013 WL 144255, at *5.

This court regularly holds that cases at this stage of development should not be stayed. With the exception of limited supplementation that is already underway, document production is over. Claim construction has been briefed, and the parties are

---

[3] Indeed, Prollenium has already stated it does not believe any claim construction is necessary for the '202 and '896 Patents. While Allergan reserves judgment pending exchange of the parties' contentions, it is likewise optimistic that claim construction could be avoided.

about to narrow their theories in ways that will likely eliminate a *Markman* hearing. The parties are well on track to complete expert discovery by early next year and to be prepared for a jury trial by June 2021.  A procedural posture like this weighs against a stay.  *See Yodlee Inc. v. Plaid Techs. Inc.*, C.A. 14-1445-LPS-CJB, (D.I. 312 at 9–10) (D. Del. Nov. 16, 2016) (finding that the "status of the litigation" factor disfavored a stay where extensive fact discovery had been completed, fact discovery was to close in a month, and the claim construction process had concluded); *Copy Prot.*, 2015 WL 3799363, at *1 (finding this factor weighs against a stay where "the parties have engaged in a substantial amount of discovery and are set to complete claim construction briefing shortly.").

## VII.  CONCLUSION

For the foregoing reasons, Allergan respectfully requests that the Court deny Prollenium's motion to stay.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

OF COUNSEL:

Gary E. Hood
Mark T. Deming
Luke T. Shannon
Randal S. Alexander
Enes Ovcina
POLSINELLI PC
150 North Riverside Plaza, Suite 3000
Chicago, IL  60601
(312) 819-1900

*Attorneys for Plaintiffs*

May 4, 2020

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the text of the foregoing document uses a 14-point Times New Roman typeface and contains 4,998 words as determined by the word count feature of Microsoft Word (excluding the caption, tables, and signature block).

May 4, 2020

/s/ Jeremy A. Tigan
Jeremy A. Tigan (#5239)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 4, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 4, 2020, upon the following in the manner indicated:

John G. Day, Esquire                          *VIA ELECTRONIC MAIL*
Andrew C. Mayo, Esquire
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
*Attorneys for Defendants*


John W. Harbin, Esquire                       *VIA ELECTRONIC MAIL*
Gregory J. Carlin, Esquire
Warren Thomas, Esquire
Robert J. Leonard, Esquire
MEUNIER CARLIN & CURFMAN LLP
999 Peachtree Street NE, Suite 1300
Atlanta, GA  30309
*Attorneys for Defendants*


                                        */s/ Jeremy A. Tigan*
                                        _____
                                        Jeremy A. Tigan (#5239)