## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALLERGAN USA, INC. and | ) | |
| ALLERGAN INDUSTRIE SAS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-104 (CFC) |
| | ) | |
| PROLLENIUM US INC. and | ) | |
| PROLLENIUM MEDICAL | ) | |
| TECHNOLOGIES INC., | ) | |
| | ) | |
| Defendants. | | |

## ALLERGAN'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' RENEWED MOTION TO STAY PENDING *INTER PARTES* REVIEW

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

OF COUNSEL:

Gary E. Hood
Mark T. Deming
Randal S. Alexander
Enes Ovcina
POLSINELLI PC
150 North Riverside Plaza, Suite 3000
Chicago, IL  60601
(312) 819-1900

June 22, 2020

*Attorneys for Plaintiffs*

# **TABLE OF CONTENTS**

I.   Introduction ........................................................................................1

II.  Nature & Stage of the Proceedings & Statement of Facts .................2

III. Legal Standard...................................................................................6

IV. Argument............................................................................................6

     A.   A Stay Pending Resolution of Prollenium's Newly-Filed IPRs
          Would Unduly Prejudice Allergan and its Licensees. ........................6

          1.   Prejudice to Allergan and its Licensees Will Be
              Substantial. ..........................................................................6

          2.   Prollenium's Timing Reflects Tactical Decision-Making..........9

     B.   A Stay Will Not Simplify Issues. ......................................................12

          1.   Absent Prollenium's Agreement To Permanently
              "Forego" Inequitable Conduct, Too Many Issues Would
              Remain to Be Resolved Once a Stay is Lifted..........................12

          2.   Prollenium Appears to be Trying to Preserve the Ability
              to Renew Its Inequitable Conduct Defense..............................12

     C.   The Court Should Schedule This Case for Trial in June 2021 ...........13

V.  Conclusion.........................................................................................14

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Belden Techs., Inc. v. Superior Essex Commn's LP*,
   Civ. No. 08-63-SLR, 2010 WL 3522327 (D. Del. Sept. 2, 2010) .....................11

*Cephalon, Inc. v. Impax Labs., Inc.*,
   C.A. 11-1153-SLR, 2012 WL 3867568 (D. Del. Sept. 6, 2012) .........................6

*Copy Protection LLC v. Netflix, Inc.*,
   C.A. No. 14-365-LPS, 2015 WL 3799363 (D. Del. June 17, 2015) ...................7

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.*,
   734 F. Supp. 656 (D. Del. 1990) ..........................................................................6

*Realtime Data LLC v. Actian Corp.*,
   Civil No. 6:15-CV-463-RWS-JDL, 2016 WL 3277259
   (E.D. Tex. June 14, 2016) ....................................................................................7

*St. Clair Intellectual Property Consultants, Inc. v. Sony Corp.*,
   C.A. No. 01-557-JJF, 2003 WL 25283239 (D. Del. Jan. 30, 2003) ...................7

*TruePosition, Inc. v. Polaris Wireless, Inc.*,
   C.A. No. 12-646-RGA/MPT, 2013 WL 5701529 (D. Del. Oct. 21,
   2013) ..............................................................................................................9, 11

*Wi-LAN Inc. v. Sharp Elecs. Corp.*,
   C.A. No. 15-379-LPS, 2018 WL 914779 (D. Del. Feb. 15, 2018) ....................13

**Rules and Statutes**

FED. R. CIV. P. 41(a) ...............................................................................................13

## I.    INTRODUCTION

In its "renewed" motion to stay this competitor-on-competitor litigation, Prollenium does not even address the legal standard for adjudicating motions to stay. Although this Court has broad discretion to stay litigation, it must be exercised in an *equitable* manner.  Here, there is no equity.

Throughout this litigation—and even before it began—Prollenium has tried to gain competitive advantages through legal tactics and delay.  It started in October 2018, when Prollenium bought time to launch its product while engaging in discussions with Allergan under the guise of obtaining a license. Then, in the midst of "negotiations," Prollenium launched its product without notice.  Then, when Allergan filed its original suit in this Court, Prollenium threatened to file Inter Partes Reviews ("IPRs")—in January 2019—but then waited more than six months before trickling out its IPRs over a series of months.  Throughout that time, rather than participate in the litigation, Prollenium stonewalled, refusing to provide non-infringement contentions or to produce relevant documents.

The dilatory tactics continued in this litigation.  Rather than immediately file IPRs on U.S. Patent Nos. 10,391,202 (the "'202 patent") and 10,485,896 (the "'896 patent"), Prollenium waited more than four months after Allergan filed suit (and more than 2 months after its other IPRs were instituted).  At the last hearing, Prollenium explained its delays in filing the two newest IPRs as somehow

contingent on receiving Allergan's infringement contentions.  That excuse is belied by the fact that its IPRs for the '202 and '896 patents challenge all 60 claims in the patents, while Allergan only asserted 20 (a limit that was the product of extensive negotiations between the parties) and identified them to Prollenium in early May.

The upshot is two-fold.  First, it is now clear that Prollenium always could have filed these IPRs.  There was no reason—other than delay—not to have filed them earlier, if not soon after the patents issued, then immediately after they were asserted in this case.  Second, as a result of its delay, Prollenium stands to gain an even greater unfair competitive advantage.  A case that should be ready for trial in less than a year now stands to have its resolution delayed for three or four more years.  All the while, Allergan and its licensees will be suffering lost sales and eroded prices, and Prollenium will reap the rewards.

Given Prollenium's delay in instituting these IPRs, the prejudice to Allergan from a stay, and the absence of simplification of issues from a stay, this litigation should proceed.

## II.  NATURE & STAGE OF THE PROCEEDINGS & STATEMENT OF FACTS

Allergan and Prollenium are competitors in the market for HA dermal fillers that include lidocaine.  Prollenium entered this market despite its awareness of Allergan's patents.   And now, rather than litigate this case on the merits, Prollenium seeks a de facto license, self-prescribed, to continue marketing its

infringing product while the USPTO and the Court of Appeals take years to review IPRs that were only recently filed.

The '202 and '896 patents issued on August 27, 2019, and November 26, 2019, respectively. Prollenium, no doubt aware of them from the day they issued, did not timely challenge them in IPRs. Prollenium waited until June 2020—more than four months after Allergan filed suit—to file its latest round of petitions.

The filings themselves are not the product of Prollenium's diligence, but were spurred by the Court's denial of Prollenium's first motion to stay. During the May 20 hearing, the Court questioned Prollenium's failure to file the IPRs it had been threatening, and acknowledged Allergan's concerns about the likelihood of simplifying issues, not the least of which was Prollenium's inequitable conduct defense. While advising it would entertain a renewed motion if Prollenium would file the IPRs and forego the inequitable conduct defense, the Court instructed the parties to confer about next steps and the potential submission of a revised case schedule. 5/20/20 Hearing Tr. at 23:15–25:7.

Following the hearing, Allergan quickly sent Prollenium a proposed schedule based on deadlines the parties had already agreed would govern this case, but Prollenium refused to engage. *See* Ex. A (May 27, 2020 Deming to Thomas Email String). When it finally responded, Prollenium ignored the proposed schedule but asked if Allergan would consent to a stay if Prollenium were to

"drop" inequitable conduct. *Id.* When inquiring what Prollenium meant by "drop," Allergan asked what Prollenium's intentions were with respect to the IPRs it had been threatening to file but had still not filed, and whether, in Prollenium's view, the requested stay would continue through the appeals of those IPRs. *Id.*

Finally, on May 29, Prollenium explained that it intended to file a motion to stay in "the second case," *i.e.*, C.A. 20-104, and that it was proposing to dismiss inequitable conduct "in ***that*** case ***without prejudice*** once the stay is lifted," and that Prollenium would prefer the stay to continue through any appeals. *See* Ex. B (May 29, 2020 Harbin to Deming Email String) (emphasis added).

Allergan's position all along has been that a stay is inappropriate, but it gave due consideration to Prollenium's proposal. However, removing the defense from only one of the two cases would not have a simplifying effect, and a delayed dismissal without prejudice raised concerns about the eventual resurrection of the defense. Nevertheless, to avoid burdening this Court again by this issue, Allergan tried to explore a possible resolution. Ex. C (June 5, 2020 Deming to Harbin Email String). Throughout these discussions, Prollenium was silent as to whether it would proceed with filing additional IPRs. Despite expressly inquiring about Prollenium's intentions, the first notice Allergan received was service of petition papers on June 2.

The petitions are notable in that they challenge every claim in each patent. While having previously explained that the IPRs were delayed pending receipt of Allergan's infringement contentions, which Allergan served on May 8, Prollenium's petitions seek review of every claim—not only those asserted by Allergan in this case.

In the absence of a stay, Allergan has endeavored to keep the case moving forward pending the Court's decision, but Prollenium refuses to litigate. The parties had previously engaged in a lengthy back-and-forth to reach agreement regarding the case schedule, which included efforts to narrow the issues in the case in advance of trial, and concessions by Allergan to limit the number of asserted claims in this case in exchange for the joint submission of a proposed schedule to the Court. (D.I. 20). Allergan complied with that schedule, but Prollenium reneged on its agreement and unilaterally refused to engage in discovery, presuming that the Court will grant its motion to stay. By its refusal, Prollenium once again is delaying the eventual resolution of this case, ensuring that much more will need to be done once the stay is lifted and that it will take that much longer to reach trial, during which time it will continue to infringe Allergan's patents.

## III.    LEGAL STANDARD

Motions to stay invoke the broad discretionary powers of the court. *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990).  In exercising its discretion on a motion to stay, the court generally considers three factors: "(1) whether the granting of a stay would cause the non-moving party to suffer undue prejudice from any delay or allow the moving party to gain a clear tactical advantage over the non-moving party; (2) whether a stay will simplify the issues for trial; and (3) whether discovery is complete and a trial date set." *Cephalon, Inc. v. Impax Labs., Inc.*, C.A. 11-1153-SLR, 2012 WL 3867568, at *2 (D. Del. Sept. 6, 2012).  Notwithstanding Prollenium's eleventh-hour IPR filings, these factors continue to weigh against a stay in this case.

## IV.    ARGUMENT

### A.    A Stay Pending Resolution of Prollenium's Newly-Filed IPRs Would Unduly Prejudice Allergan and its Licensees.

A stay here would inject additional delay in this case.  Throughout that period of delay, Prollenium will continue to sell infringing product, to the detriment of Allergan and its licensees.

#### 1.  Prejudice to Allergan and its Licensees Will Be Substantial.

Staying this case now, after Prollenium finally has filed its IPRs, will cause substantial prejudice to Allergan by delaying final resolution of its claims for years.  "[S]taying a case pending [US]PTO review risks prolonging the final

resolution of the dispute and thereby may result in some inherent prejudice to the plaintiff." *Copy Protection LLC v. Netflix, Inc.*, No. 14-365-LPS, 2015 WL 3799363, at *1 (D. Del. June 17, 2015) (citation omitted).   In its opposition to Prollenium's prior motion to stay (*see* D.I. 21), Allergan described the likelihood of prejudice it will suffer if Prollenium is permitted to continue infringing at risk of an adverse judgment for multiple years.   That prejudice would be amplified if a stay were to be entered based on Prollenium's latest IPRs, which trail the original batch by as many as 10 months.

The Patent Trial and Appeal Board ("PTAB") will not make a determination on whether to institute Prollenium's late-filed IPRs until at least December of this year, and even if it decides to institute the IPRs, a final written decision would not be issued until late 2021.   Thus, Prollenium asks this Court to delay the trial of this case—which involves direct competitors—until late 2022 (or later in the event of appeal).   After factoring in time to complete discovery following any appeal, the effect would be delaying a case for several years that would otherwise be ready for trial by June of next year.   *See St. Clair Intellectual Property Consultants, Inc. v. Sony Corp.*, No. 01-557-JJF, 2003 WL 25283239, at *1 (D. Del. Jan. 30, 2003) (reasoning that delay of the trial would unduly prejudice the patentee in view of the substantial progress of the case); *Realtime Data LLC v. Actian Corp.*, Civil No. 6:15-CV-463-RWS-JDL, 2016 WL 3277259, *2 (E.D. Tex. June 14, 2016)

("[A] stay could delay this case until January 8, 2018, which is well beyond the scheduled trial date of May 22, 2017.  The delay could be further exacerbated if Defendants invoke their right to appeal the PTAB's decision to the Federal Circuit. Such a lengthy delay will result in significant prejudice to Realtime and, therefore, this factor weighs against a stay." (citations omitted)).

The undue prejudice to Allergan and its licensees from a stay would be compounded in the event Prollenium were to be able to reinject inequitable conduct into this case (which it is only offering to dismiss "without prejudice") at the conclusion of a stay.  The lengthy stay that Prollenium seeks will ensure that the evidence contradicting inequitable conduct will grow stale—between now and the expiry of a stay, witnesses might no longer be employed by Allergan and their memories will no doubt have faded.   All of this would work to Allergan's detriment if Prollenium's inequitable conduct allegations remain in the case.

This prejudice is further compounded by the economic harm a stay would cause to Allergan and its licensees.  (D.I. 21 at 12-16).   In short, because Prollenium and Allergan directly compete in the market for dermal fillers, each sale that Prollenium makes is a sale diverted from Allergan or one of its licensees. In order to preserve market share, Allergan and its licensees may need to adjust their prices and charge less than they could if they otherwise had the benefit of their exclusionary patent rights.   The consequent price erosion and/or loss of

8

market share will permanently reshape the market for Allergan and its licensees even if Prollenium is ultimately removed from the market.  Granting the additional stay Prollenium now requests therefore would cause Allergan and its licensees to suffer further compounding losses due to diluted market share and price erosion, while allowing Prollenium to reap the benefits of its infringing sales.

### 2.  Prollenium's Timing Reflects Tactical Decision-Making.

Just as it did in bringing the IPRs when it did to gain an advantage in the first case, Prollenium has again delayed in bringing IPRs in the second case.  The effect, of course, has been to delay when the stay starts—and by extension, ends—so as to enable it to continue to infringe for as long as possible before any ultimate liability determination.

> a.  Prollenium Repeatedly Has Delayed IPR Filings With No Legitimate Explanation.

The Court should consider Prollenium's significant delay in bringing these IPRs and the likely effect it will have on the prejudice to Allergan.  *See TruePosition, Inc. v. Polaris Wireless, Inc.*, No. 12-646-RGA/MPT, 2013 WL 5701529, at *6 (D. Del. Oct. 21, 2013) ("The more diligent a party is in seeking *inter parties* [sic] review, the less likely its petition is prejudicial to the non-movant.").  As the Court previously observed, Prollenium waited months to file these IPRs.  Although it ultimately did file its petitions after the Court inquired about the delay during the May 20 hearing, the speed with which it was able to

9

prepare and file these petitions calls into question Prollenium's prior attempt to explain its delay to the Court.

           **b. Prollenium Told This Court It Needed Infringement Contentions Before Filing The IPR Petitions, But Filed IPRs on All 60 Patent Claims Despite Allergan Asserting Only 20 Claims.**

During the May 20 hearing, Prollenium explained that it had delayed filing IPRs in C.A. 19-126 because it was waiting on infringement contentions so that it could "only address the claims we need to address." 5/20/20 Tr. at 15:14–21. In this case, by the agreement of the parties, Allergan provided Prollenium with infringement contentions for 20 asserted claims on May 8, 2020, 12 days before the hearing.[1] (*See* D.I. 25). And yet after receiving those contentions identifying which "claims [it] need[ed] to address," Prollenium went on to file IPRs as to all 60 claims in the patents anyway, just three weeks after the receipt of the infringement contentions and two weeks after the last hearing.

           **c. Prollenium Ignored Allergan's Repeated Requests to Coordinate.**

Prollenium's dilatory motive is also evident in Prollenium's recent correspondence. Allergan has asked Prollenium repeatedly if it would abide by a

---

[1] The number of asserted claims in this case was the product of extensive negotiation by the parties that culminated in Allergan agreeing to provide infringement contentions for a narrow set of claims by a specific date. In exchange, Prollenium agreed to provide non-infringement and invalidity contentions. While Allergan held up its end of that bargain, Prollenium has since refused to provide any contentions in view of its renewed motion to stay. *See* Ex. D (June 12, 2020 Harbin to Deming Email String).

schedule it had already agreed to, and Prollenium refused to engage. *See* Ex. A – Ex. C. Likewise, Prollenium obscured its intent for the threatened IPRs despite Allergan's direct inquiries about them, only to file them late in the evening on June 2, on the eve of the deadline the Court initially set for the parties to submit a schedule or seek a stay. *See* Exs. E, F (June 2, 2020 Heidt Emails).

Courts in this District and elsewhere have recognized that "[f]ilings for IPR made well after the initiation of litigation . . . may suggest an unfair tactical advantage or dilatory motive." *TruePosition, Inc.*, 2013 WL 5701529, at *6 (finding that a stay would prejudice the non-movant where, among other things, the movant waited to file its IPR petitions until "close to the eve of claim construction briefing, and after substantial document discovery was conducted"); *see also Belden Techs., Inc. v. Superior Essex Commn's LP*, No. 08-63-SLR, 2010 WL 3522327, at *2 (D. Del. Sept. 2, 2010) ("A request for reexamination made well after the onset of litigation followed by a subsequent request to stay may lead to an inference that the moving party is seeking an inappropriate tactical advantage."). Prollenium's actions here suggest a motivation to gain an unfair tactical advantage.

**B.    A Stay Will Not Simplify Issues.**

**1.  Absent Prollenium's Agreement To Permanently "Forego" Inequitable Conduct, Too Many Issues Would Remain to Be Resolved Once a Stay is Lifted.**

As the Court is aware, the IPRs are limited to patentability under §§ 102 and 103.  The USPTO will not address inequitable conduct, nor will it address other issues like Prollenium's § 112 invalidity arguments, Allergan's infringement claims, or the parties' competing views about damages.  Thus, the IPRs are not likely to simplify the case unless, at minimum, Prollenium threads the needle and wins on every challenged claim.  The Board's institution is not due until December 2020 and, if instituted, a final written decision would likely not issue before late 2021.

**2.  Prollenium Appears to be Trying to Preserve the Ability to Renew Its Inequitable Conduct Defense.**

Prollenium's refusal to forego inequitable conduct simply adds to the issues that will remain to be litigated once a stay is lifted.  Prollenium's proposal to withdraw inequitable conduct "without prejudice," and limited to C.A. 20-104, is inconsistent with the Court's direction following the May 20 hearing.

Although the Court did not expressly say a dismissal must be with prejudice, the fact remains that dismissing inequitable conduct without prejudice—and even then only from C.A. 20-104, and not also C.A. 19-126—could allow the issue to return after a stay is lifted.  A dismissal without prejudice, by its very terms, does

12

not preclude the party dismissing from reasserting the claim once dismissed. *See, e.g.*, FED. R. CIV. P. 41(a); *Wi-LAN Inc. v. Sharp Elecs. Corp.*, No. 15-379-LPS, 2018 WL 914779, at *1 (D. Del. Feb. 15, 2018) (recognizing that dismissal without prejudice results in the "prospect that [the non-dismissing party] will face a subsequent lawsuit"). Although Prollenium appears in its Motion to have agreed to dismiss the issue from both cases, it still insists that dismissal be without prejudice and not until the stay is lifted. Prollenium's view that the Court would not permit Prollenium to re-assert inequitable conduct later in these actions—despite the dismissal having been entered without prejudice—is irreconcilable with its unwillingness to dismiss with prejudice and its insistence on delay. Such a dismissal does not assure Allergan that the issue will not be resurrected by Prollenium if and when this litigation restarts, and in that event the issues would not be simplified by the requested stay. Thus, this factor should weigh against granting Prollenium's renewed motion.

### C.   The Court Should Schedule This Case for Trial in June 2021

Although trial has not yet been set in this case, the parties had previously reached agreement and submitted a proposed schedule for the Court's consideration that would have culminated in a June 2021 trial date, as had originally been set in C.A. 19-126. (*See* D.I. 20). As Allergan has previously set

13

forth, (D.I. 21), the parties made significant progress in C.A. 19-126, which will enable them to move forward with this case on the timeline they originally agreed.

## V.    CONCLUSION

Therefore, Allergan respectfully requests that the Court deny Prollenium's motion and schedule this case for trial in June 2021.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

_____
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Gary E. Hood
Mark T. Deming
Randal S. Alexander
Enes Ovcina
POLSINELLI PC
150 North Riverside Plaza, Suite 3000
Chicago, IL  60601
(312) 819-1900

June 22, 2020

## **WORD COUNT CERTIFICATION**

The undersigned hereby certifies that the substantive text of Plaintiffs'
June 22, 2020 Answering Brief in Opposition to Defendants' Renewed Motion to
Stay Pending *Inter Partes Review* contains 3,147 words, as counted by the word
count feature of Microsoft Word.

/s/ Jeremy A. Tigan
Jeremy A. Tigan (#5239)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 22, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 22, 2020, upon the following in the manner indicated:

John G. Day, Esquire                                    *VIA ELECTRONIC MAIL*
Andrew C. Mayo, Esquire
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
*Attorneys for Defendants*

John W. Harbin, Esquire                               *VIA ELECTRONIC MAIL*
Gregory J. Carlin, Esquire
Warren Thomas, Esquire
Robert J. Leonard, Esquire
MEUNIER CARLIN & CURFMAN LLP
999 Peachtree Street NE, Suite 1300
Atlanta, GA  30309
*Attorneys for Defendants*

*/s/ Jeremy A. Tigan*
_____
Jeremy A. Tigan (#5239)