IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALLERGAN USA, INC. and ALLERGAN INDUSTRIE SAS, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) C.A. No. 20-104-CFC<br>) |
| PROLLENIUM US INC. and PROLLENIUM MEDICAL TECHNOLOGIES INC., | )<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO STAY PENDING *INTER PARTES* REVIEW**

*Of Counsel:*

John W. Harbin
Gregory J. Carlin
Warren Thomas
Robert J. Leonard
MEUNIER CARLIN & CURFMAN LLC
999 Peachtree Street NE, Suite 1300
Atlanta, GA 30309
(404) 645-7700

ASHBY & GEDDES
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendants*

Dated: June 29, 2020

{01580810;v1 }

## **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................1

II. ARGUMENT......................................................................................................2

    A. The Motion to Stay Factors Continue to Favor A Stay........................ 2

    B. Prollenium's Dismissal Of Its Inequitable Conduct Counterclaim And Defense Should be Without Prejudice ................................................. 4

    C. Allergan's Attempt To Cast Prollenium As A Bad Actor Misses The Mark ..................................................................................................... 5

        1. There Has Been No Unreasonable Delay or Inappropriate Legal Tactics ........................................................................................6

        2. Prollenium Has Diligently and Efficiently Litigated This Case.8

        3. The Proposed Scheduling Order ...............................................9

III. CONCLUSION................................................................................................11

-ii-

## TABLE OF AUTHORITIES

CASES                                                                                                          Page(s)

*British Telecomms. PLC v. IAC/InterActiveCorp*, No. 18-366-WCB,
    2019 WL 4740156 (D. Del. Sept. 27, 2019) ................................................ 9

*Wi-LAN Inc. v. Sharp Elecs. Corp.*, No. 15-379-LPS,
    2018 WL 914779 (D. Del. Feb. 15, 2018) ..................................................... 4

## I. INTRODUCTION

Following the Court's instructions in connection with its Order granting a stay in the first action, Prollenium filed *inter partes* review ("IPR") petitions on the two patents asserted in this action,[1] agreed to forego its inequitable conduct counterclaim and defense in exchange for a stay, and renewed its motion to stay this case. These actions by Prollenium are the only changes since the May 20 hearing where the Court stayed the first case. The relevant factors now favor even more staying this case as well.

The key dispute remaining between the parties following the May 20 hearing appeared to be whether the dismissal of the inequitable conduct counterclaim should be with or without prejudice. Allergan in fact suggested that it would consent to a stay if the dismissal was with prejudice. D.I. 32-01, Ex. C. Prollenium explained that, while it has no intention of reasserting its inequitable conduct counterclaim/defense here, it must preserve its right to reassert it should Allergan file yet another lawsuit against Prollenium. Allergan's opposition, however, strays far from that issue, rehashes arguments previously addressed, and posits a false narrative attempting to portray Prollenium as a bad actor in these actions, when the truth is the opposite.

---

[1] The "Asserted Patents" are U.S. Patents 10,391,202 ('202 patent) and 10,485,896 ('896 patent).

## II.     ARGUMENT

### A.     The Motion to Stay Factors Continue to Favor A Stay

The parties previously briefed the stay factors as to both actions, and this Court granted a stay in the first case. *See* D.I. 15, 21, 26; D.I. 30-1, Ex. A (Transcript of May 20, 2020 Hearing), 23:1-13).[2] The Court found that the PTAB's review of all asserted claims in the first case will greatly simplify the issues for trial and that a stay would not unfairly prejudice Allergan. *Id*. Though Allergan spends much of its opposition rehashing these factors, nothing has changed since then to warrant a different result. In fact, Allergan has offered no new evidence to change the analysis.

The only significant events that have occurred are those that the Court suggested: completing the IPR filings and Prollenium's foregoing the inequitable conduct counterclaim/defense once the case is stayed.[3] Because the Asserted Patents here are closely related to the six patents that are already being reviewed by the PTAB, the Board is likely to institute on the two new IPRs as well. Having reviewed the two new petitions, Allergan still does not dispute that fact. *See* D.I.

---

[2] Because there has been no change in the facts related to the typical stay factors, Prollenium's renewed motion to stay incorporated by reference the briefing on its prior stay motion. D.I. 30, 2 n.1.

[3] Allergan complains that Prollenium "insists" the claim will not be dismissed "until the stay is lifted," but Prollenium's brief and proposed order plainly state it will request dismissal "after the stay is entered." D.I. 30, 13; D.I. 30-2.

26, 4 ("Allergan also does not contest that 'institution is highly likely' for the two newly asserted patents."). If anything, a stay here provides *more* simplification than a typical IPR, by removing a well-pled unenforceability defense, should any claims survive IPR.

The early stage of this case favors a stay. The case was only filed on January 23, 2020; the petitions were filed just four months later. The parties exchanged initial disclosures, Allergan served infringement contentions, and the parties agreed to allow documents produced in the 2019 litigation to be used in this case. The parties jointly submitted a scheduling order for the Court's consideration, but the Court declined to enter it following the hearing on the stay motions, directing the parties instead to "either submit a [revised] proposed scheduling order or, alternatively, a motion to stay." May 20, 2020 Oral Order. The Court indicated it would "immediately" take up any motion to stay. D.I. 30-1, 23:14-18, 25:1-7.

Despite Prollenium doing what the Court suggested, Allergan refused to consent to the motion to stay and used this as a second opportunity to argue undue prejudice. But Allergan again fails to present any evidence to support its rote arguments, which the Court previously found unpersuasive.[4]

---

[4] For example, Allergan again failed to show how any delay could not be remedied by money damages.

Thus, for at least the same reasons that the Court stayed the first case, a stay is also appropriate here.

### B.   Prollenium's Dismissal Of Its Inequitable Conduct Counterclaim And Defense Should be Without Prejudice

As the Court directed, Prollenium has agreed to further simplify the case by foregoing its inequitable conduct counterclaim and defense.  The issue is whether such dismissal should be *with* or *without* prejudice.

Allergan does not substantively respond to Prollenium's concerns (D.I. 30, 3-4) about the preclusive effect of dismissing with prejudice. Instead, Allergan cites to *Wi-LAN* to support its statement that a dismissal without prejudice leaves open the possibility of a **subsequent** lawsuit.  D.I. 32, 13 (citing *Wi-LAN Inc. v. Sharp Elecs. Corp.*, No. 15-379-LPS, 2018 WL 914779, at *1 (D. Del. Feb. 15, 2018)).  But *Wi-LAN* shows why Prollenium seeks a dismissal without prejudice: to preserve the inequitable conduct defense for **subsequent** lawsuits.  *Cf.* D.I. 30-4, 4. (Not only did Allergan not accept Prollenium's invitation to explain if it could why Prollenium's concerns are not valid, Allergan has not provided any assurances it would *not* claim in a later case that a dismissal with prejudice has preclusive effect.)  In *Wi-LAN*, the court noted the general rule that voluntary dismissal *without* prejudice "should be granted liberally" except where the party "will suffer plain legal prejudice"—more than the mere prospect of a subsequent lawsuit.  *Id.* In other words, the prospect that Prollenium may re-raise this *defense* in a later suit

by Allergan is no reason to deviate from the general rule permitting dismissals without prejudice.

Allergan feigns concern that Prollenium will later attempt to "resurrect" inequitable conduct in this litigation. D.I. 32, 12-13. But Prollenium has repeatedly assured Allergan *and this Court* that Prollenium will not seek to do so. D.I. 30, 4; *see also* D.I. 32-1, Ex. B, 1 and Ex. C, 1, 3. And Allergan does not respond to Prollenium's point that "undoubtedly the Court would not permit" Prollenium to do so. Allergan fails to justify its need for a dismissal *with prejudice*.[5]

### C. Allergan's Attempt To Cast Prollenium As A Bad Actor Misses The Mark

With the facts and the law supporting a stay of the case, Allergan tries to divert the Court's attention by trying to portray Prollenium as a bad actor refusing to litigate the merits. This portrayal is false. While Prollenium does not believe Allergan's mudslinging is germane to this motion, Prollenium is compelled to address Allergan's multiple misstatements to provide an accurate record of what has actually occurred. The reality is that Allergan—the dominant market player

---

[5] While dismissal with prejudice is inappropriate here, Allergan's purported concerns would be addressed by an Order from the Court that Prollenium cannot later re-assert inequitable conduct in this case.

and a huge company even before AbbVie acquired it for $63 billion[6]—has engaged in carpet-bomb litigation to bully Prollenium, a small private company, into submission. Allergan initially filed suit against Prollenium asserting two patents. After Prollenium tried to resolve the case and was candid with Allergan about what it planned to do—file IPRs to invalidate the two asserted patents (including providing the relevant prior art references), Allergan added four more patents to the first action, asserting *125 claims* against a *single* accused product. Allergan then filed this suit, asserting two *more* patents against the same product. Far from conjuring up a strategy of delay, Prollenium, unlike Allergan, has endeavored to efficiently litigate the merits of the patents' validity—before the USPTO.

    **1.**    ***There Has Been No Unreasonable Delay or Inappropriate Legal Tactics***

Allergan's argument that Prollenium has attempted to delay as a way to gain a competitive advantage in this litigation is belied by the facts, including that Prollenium tried to get Allergan to reduce the number of asserted claims to allow for efficient litigation and earlier agreed to a proposed joint schedule with trial set to occur 17 months after this case was filed. Allergan even argues that Prollenium "launched its product without notice." D.I. 32, 1. That argument is both irrelevant and false: Prollenium reached out to Allergan in good faith to inform them that it

---

[6] https://www.reuters.com/article/us-allergan-m-a-abbvie/abbvie-allergan-63-billion-deal-aided-by-nestle-astrazeneca-buys-idUSKBN1ZQ0RC.

had developed and was preparing to market its product and to explore an amicable resolution of any issues. D.I. 21-1 (Ex. A), 4.

Second, Allergan's purported concerns about delay are belied by its own actions in filing a complaint that is essentially identical to the complaint in the first case. Although the '202 patent issued in August 2019, Allergan waited five months to sue, providing no prior notice to Prollenium of its intention to do so. Allergan imagines (without support) that Prollenium was "aware of [the new patents] from the day they issued" to argue Prollenium did not "timely challenge them in IPRs." But Prollenium was focused on defending (including at the PTO) against the 125 claims Allergan was already asserting at the time. Prollenium had no reason to prepare IPR petitions on unasserted patents until Allergan chose to sue.

If Allergan was truly concerned about delays in these litigations, it would have immediately filed its complaint upon issuance of the '202 patent or sought to have it added to the first case. It is disingenuous for Allergan to argue that taking four months to prepare and file a complex IPR petition constitutes an unreasonable delay, where it delayed almost five months in filing a copycat of its earlier complaint.

Additionally, contrary to Allergan's argument that our IPRs were "contingent on receiving Allergan's infringement contentions" (D.I. 31, 2),

Prollenium told the Court that it made little sense from a strategic and *efficiency* standpoint to finalize and file its final two IPR petitions without the benefit of reviewing the institution decisions on the first seven IPRs.  D.I. 30-1, 8:8-20.  While Prollenium was certainly interested in Allergan's infringement contentions, the filing of Prollenium's petitions was not "contingent" on Allergan's disclosures.  Prollenium told the Court (and Allergan) that it would file its petitions within 30 days of the hearing (D.I. 30-1, 6:10-13), and it did so in just under two weeks— *and less than two months after the final institution decision was entered* as to the patents at issue in the first case.  *See* D.I. 32-1 (Exs. E-F).  These are hardly "eleventh-hour IPR filings" as Allergan argues.  *See* D.I. 32, 6.[7]

Allergan's complaint that it had no notice that Prollenium intended to file the additional IPRs (D.I. 32, 4) is both immaterial and nonsensical.  Not only did Prollenium state in open court that it would be filing the IPRs, it had told Allergan that before.  *E.g.*, D.I. 30-1, 6:10-23; D.I. 32-1, Ex. B.

### 2. *Prollenium Has Diligently and Efficiently Litigated This Case*

Allergan next argues that Prollenium is refusing to litigate this case, when in fact that is precisely what Prollenium is doing.  *See, e.g.*, D.I. 32, 1-2, 5.  As

---

[7] Thus, Allergan's complaint that the last two IPR petitions "trail the original batch by as many as 10 months" (D.I. 32, 7) is a red herring.  It could be also said that Allergan did not file the second case until 12 months after the first case.  *Compare* D.I. 1 *with* C.A. 19-126, D.I. 1.

supported by the PTAB's institutions of trial on all claims challenged and all grounds asserted to date, Prollenium believes that the claims of Allergan's patents are invalid, and Prollenium seeks to address this issue before engaging in more costly and unnecessary litigation of claims that will not survive PTAB review. Addressing the invalidity of the Asserted Patents now is the most efficient way to simplify the issues for trial and reduce the burdens on the parties and on this Court. *British Telecomms. PLC v. IAC/InterActive Corp*, No. 18-366-WCB, 2019 WL 4740156, at *2 (D. Del. Sept. 27, 2019) (explaining stay is "particularly justified" where it is likely to determine patent validity or eliminate infringement).

Allergan's complaint that Prollenium has refused to "participate in the litigation" and that it has "stonewalled" discovery (D.I. 32, 1) is false; rather it is Allergan that has litigated in unreasonable fashion. After rejecting Prollenium's request to reduce the number of asserted claims, Allergan moved to compel noninfringement contentions for more than 100 claims—the only discovery motion Allergan has filed. C.A. 19-126, D.I. 75. Judge Fallon *denied* that motion, and only then did Allergan narrow the asserted claims. C.A. 19-126, Ap. 2, 2020 Oral Order.

### 3. *The Proposed Scheduling Order*

No schedule has been entered in this case. As noted, the Court declined to enter the proposed combined schedule for the two actions, and instead directed the

parties to "*either* submit a proposed scheduling order" for just this case "or, *alternatively*, a motion to stay." May 20, 2020 Oral Order (emphasis added); *see also* D.I. 30-1, 25:1-7.  Prollenium then filed this stay motion instead of proposing a new scheduling order.

Hence, the prior proposed scheduling order has little, if any, relevance to this motion, but Allergan refers to it throughout its brief.  *See, e.g.*, D.I. 32, 3-5. Allergan contends that Prollenium "reneged on its agreement" (D.I. 32, 5), but the parties' only agreement was to submit to the Court a proposed combined schedule for both cases.  And Prollenium *followed* the parties' proposed schedule (D.I. 20, filed May 4, 2020) up until the May 20 hearing. The status of the litigation substantially changed when the Court stayed the first case and invited Prollenium to renew its motion to stay on certain conditions.[8]  Prollenium informed Allergan of its intention to file a motion to stay this case well before any proposed deadline, *see* D.I. 32-1, Ex. B, thus mooting the alternative of submitting a new proposed schedule for this case.

Dissatisfied with the stay of the first case and the possible stay of this case, Allergan is attempting to rush the schedule to have Prollenium unnecessarily spend time and resources on issues that are likely to be mooted or altered by the IPR

---

[8] There is other information Allergan has recently disclosed that bears on the schedule, which Prollenium can address when the Court next takes up the case schedule.

proceedings. It makes little sense from an efficiency standpoint to continue to litigate infringement on claims that are likely to be found invalid or to perform claim construction without the benefit and direction of the PTAB. This is precisely what a motion to stay seeks to avoid: the wasteful, unnecessary litigating of invalid claims.

### III. CONCLUSION

Because Prollenium met the Court's conditions for renewing its motion to stay and the motion to stay factors remain in favor of it, Prollenium asks the Court to stay this litigation until the IPRs are resolved.[9]

ASHBY & GEDDES

*/s/ Andrew C. Mayo*

*Of Counsel:*

John W. Harbin
Gregory J. Carlin
Warren Thomas
Robert J. Leonard
MEUNIER CARLIN & CURFMAN LLC
999 Peachtree Street NE, Suite 1300
Atlanta, GA 30309
(404) 645-7700

John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendants*

Dated: June 29, 2020

---

[9] Contrary to Allergan's arguments (D.I. 32, 4), Prollenium would be happy to review the question of whether the stay should be continued during appeal once the PTAB has ruled on the petitions.

## CERTIFICATION OF COMPLIANCE

The undersigned hereby certifies that the foregoing brief contains 2,494 words, excluding the cover page, tables, and signature blocks, and that it complies with the Court's type, font, and word limitations.

*/s/ Andrew C. Mayo*
_____
Andrew C. Mayo